UNITED STATES, Appellee

v.

Kirk A. MOSS, Technical Sergeant
U.S. Air Force, Appellant

No. 05-0545

Crim. App. No. 35379

United States Court of Appeals for the Armed Forces

Argued February 7, 2006

Decided June 21, 2006

CRAWFORD, J., delivered the opinion of the Court, in which
GIERKE, C.J., and EFFRON, BAKER, and ERDMANN, JJ., joined.

Counsel

For Appellant:  Captain Anthony D. Ortiz (argued); Colonel
Carlos L. McDade and Lieutenant Colonel Mark R. Strickland (on
brief).

For Appellee:  Captain Jefferson E. McBride (argued); Lieutenant
Colonel Robert V. Combs, Lieutenant Colonel Gary F. Spencer, and
Captain Jin-Hwa Frazier (on brief); Major John C. Johnson.


Military Judge:  Ann D. Shane

**THIS OPINION IS SUBJECT TO REVISION BEFORE FINAL PUBLICATION.**

United States v. Moss, No. 05-0545/AF

Judge CRAWFORD delivered the opinion of the Court.

Contrary to his pleas, Appellant was convicted by a general court-martial, consisting of officer and enlisted members, of carnal knowledge, sodomy with a child,[1] and indecent acts with a child, in violation of Articles 120, 125, and 134, Uniform Code of Military Justice (UCMJ), 10 U.S.C. §§ 920, 925, 934 (2000). Appellant was sentenced to a bad-conduct discharge, seven years of confinement, forfeiture of all pay and allowances, and reduction to the lowest enlisted grade. The convening authority approved the sentence as adjudged and the United States Air Force Court of Criminal Appeals affirmed the findings and sentence. United States v. Moss, No. ACM 35379, 2005 CCA LEXIS 139, at *12, 2005 WL 1017585, at *5 (A.F. Ct. Crim. App. Apr. 14, 2005) (unpublished). This Court granted review on the following issue:

> WHETHER APPELLANT WAS DENIED MEANINGFUL CROSS-
> EXAMINATION OF GOVERNMENT WITNESSES IN VIOLATION OF
> HIS SIXTH AMENDMENT RIGHT OF CONFRONTATION WHEN THE
> MILITARY JUDGE REPEATEDLY PREVENTED TRIAL DEFENSE
> COUNSEL FROM CONFRONTING THE ALLEGED VICTIM AND OTHER
> WITNESSES WITH IMPEACHMENT EVIDENCE ADMISSIBLE UNDER
> MIL. R. EVID. 608.

For the reasons explained herein, the decision of the Court of Criminal Appeals is reversed.

---

[1] Appellant was charged with rape and forcible sodomy with a child. He was convicted of the lesser included offenses of carnal knowledge and sodomy with a child by exceptions and substitutions.

2

United States v. Moss, No. 05-0545/AF

## Facts

At the time of the offenses, Appellant was a thirty-six-year-old technical sergeant with eighteen years of service, and he was married with four children. On July 27, 2000, Appellant was traveling via motorcycle from Pensacola, Florida, to his home in Tampa, Florida, with his fourteen-year-old niece by marriage, KLVD, so that she could spend some time with his family. The two stopped for the night at Tyndall Air Force Base where they shared a billeting room. The room contained a single queen-size bed. The uncontroverted evidence was that they slept in the same bed. According to KLVD, during the night Appellant fondled her breast and thighs, penetrated her vagina with his fingers, licked her vagina, and had sexual intercourse with her. Appellant, who testified at trial, denied any sexual contact with KLVD.

In March 2001, KLVD first reported this incident when her mother picked her up from the Baptist Behavioral Center in Little Rock, Arkansas, where she had received psychological treatment following an attempted suicide. Between the date of the alleged assault and the date KLVD first reported a sexual assault to her mother, KLVD had been in three mental institutions for both inpatient and outpatient care as a result of behavior problems and suicide attempts.

At trial, the Government filed a motion in limine seeking to limit the cross-examination of KLVD, her mother, and other witnesses to exclude certain past acts or conduct. The Government sought to exclude:

(1) KLVD's use of alcohol and drugs after the rape.

(2) KLVD's two suicide attempts, one with pills and the other with a shotgun, in addition to instances where she threatened suicide.

(3) KLVD's friends' use of alcohol and drugs.

(4) General acts of disobedience, which included sneaking out late at night, getting caught with boys, lying to her parents, having parties without authorization, destruction of property at the mental institution, and conduct that resulted in removal or expulsion from school.

Appellant's trial defense counsel opposed the motion in limine stating that the past acts should be admitted under Military Rule of Evidence (M.R.E.) 608(c) as relevant to show bias and a motive to misrepresent.

The trial defense counsel asserted that he wanted to cross-examine KLVD, her mother, and the Government expert regarding these acts because he wanted to establish what the "punishment" and consequences to KLVD were for these actions in order to show

that KLVD had motive to fabricate.[2]  The trial defense counsel

wanted to reinforce this theory by showing that after the rape

report, the relationship between KLVD and her parents improved.

The trial defense counsel also wanted to question KLVD

regarding the prior false statements she made on various

occasions to her parents, school officials, and mental health

professionals.  Some of these false statements were evidenced in

KLVD's mental health records.  The defense argued that this

evidence was probative of KLVD's truthfulness and was admissible

under M.R.E. 608(b).

Ultimately, the military judge granted the Government's

motion to preclude the defense from presenting the bias evidence

because she could not find a logical connection to the defense

theory for admissibility:

> I'm saying that the logic breaks down for me as to why
> she would make -- the fact that she's been expelled
> from school and is in trouble with her mother, her
> mother has spanked her or whatever, would create a
> situation where, logically, she would make an
> allegation against the accused in this particular
> case.  It doesn't -- I'm not persuaded that there's
> even any logical connection there, that one could even
> make that argument.

### Discussion

M.R.E. 608(c) allows for evidence to show bias, prejudice,

or any motive to misrepresent through the examination of

---

[2] After one incident of misconduct, KLVD's mother beat her with a
belt.  The beating left marks on KLVD's thighs and buttocks and
ultimately resulted in intervention from Family Services.

witnesses or extrinsic evidence.[3]  United States v. Bahr, 33 M.J. 228, 232 (C.M.A. 1991) (citing Delaware v. Van Arsdall, 475 U.S. 673, 684 (1986)).  This Court has held that rules of evidence should be read to allow liberal admission of bias-type evidence. United States v. Williams, 40 M.J. 216, 218 (C.M.A. 1994).  When the military judge excludes evidence of bias, the exclusion raises issues regarding an accused's Sixth Amendment right to confrontation.  United States v. Bins, 43 M.J. 79, 84 (C.A.A.F. 1995).

Where the Sixth Amendment's right to confrontation is allegedly violated by a military judge's evidentiary ruling, the ruling is reviewed for an abuse of discretion.  See United States v. Israel, 60 M.J. 485, 488 (C.A.A.F. 2005).  If an abuse of discretion is found, the case will be reversed unless the error is harmless beyond a reasonable doubt.  Id.; see also Bahr, 33 M.J. at 231 (where an error constitutes a violation of an appellant's constitutional rights, this Court will reverse the findings of the court below unless we find the error was harmless beyond a reasonable doubt (citing Van Arsdall, 475 U.S. at 684)).  "A defendant's right under the Sixth Amendment to cross-examine witnesses is violated if the military judge

---

[3] The use of extrinsic evidence can be limited if it is collateral to an important trial issue or its relevance is not established.  United States v. Gonzales, 16 M.J. 423, 425 (C.M.A. 1983); United States v. Hunter, 17 M.J. 738, 739 (A.C.M.R. 1983).

precludes a defendant from exploring an entire relevant area of cross-examination." Israel, 60 M.J. at 486 (citing United States v. Gray, 40 M.J. 77, 81 (C.M.A. 1994)). Relevant evidence is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." M.R.E. 401. "The partiality of a witness . . . is 'always relevant as discrediting the witness and affecting the weight of his testimony.'" Davis v. Alaska, 415 U.S. 308, 316 (1974) (quoting 3A John Henry Wigmore, Evidence § 940, at 755 (Chadbourn rev. 1970)).

We hold that the military judge's exclusion of the proffered evidence denied Appellant his fundamental right of confrontation and cross-examination. We address next the offers of proof and the relevance and admissibility of the evidence under M.R.E. 608(c).

### M.R.E. 608(c)[4]

This case revolves around the conflicting testimony of Appellant and the alleged victim. When an appellant claims a violation of the Confrontation Clause on the grounds that he was prohibited from conducting an otherwise appropriate cross-

---

[4] Appellant also raised an issue regarding the military judge's ruling on the admissibility of evidence under M.R.E. 608(b). In light of our ruling regarding the admissibility of the M.R.E. 608(c) evidence, we do not address whether the military judge was correct in her rulings excluding the M.R.E. 608(b) evidence.

examination designed to show a witness's bias, the appellant has the burden of showing that a reasonable jury might have reached a significantly different impression of the witness's credibility if the defense counsel had been able to pursue the proposed line of cross-examination. Van Arsdall, 475 U.S. at 680. In this case, Appellant argues that trial counsel attempted to portray KLVD as an innocent victim with little or no problems beyond being a "normal" teenager. The trial defense counsel wanted to respond to this assertion by showing that KLVD's past acts were relevant to her motive to fabricate and that she fabricated the alleged rape to cast herself as a victim to gain favorable treatment from her parents and to improve her relationship with them. At trial and before this Court, Appellant relies on Bahr. In Bahr, 33 M.J. 233, this Court found that the military judge erred by suppressing the prosecutrix's statements that she hated her mother when it was offered to show a motive to fabricate the rape accusation against her stepfather.

Here, the military judge rejected the evidence because she did not find it relevant to Appellant's theory based on the Bahr case. The military judge stated:

> If the allegation had been made against the alleged victim's father, for example, or the mother's boyfriend, for example, and it was the mother's boyfriend who was on trial here, then I could follow the defense counsel's logic . . . . I've not heard any

8

        evidence that would bring the accused into the picture
        at all, as to why he would be a logical target for her
        to make that allegation against.

In overlooking the greater theory of admissibility, the military judge erred.

As a result of the military judge's ruling, the defense did not have the ability to attack the allegations by KLVD or present evidence to show why KLVD fabricated or embellished the true nature of the situation that occurred in the billeting room. The defense was not allowed to show that KLVD was constantly in trouble with alcohol, drugs, and general misconduct, that her friends were involved in similar conduct, and that her mother had became more restrictive on her liberty. Appellant was not allowed to show that KLVD was unhappy with the restrictive, controlling environment she was under and that, as a result, KLVD had a motive to misrepresent the event with Appellant in order to change her own present circumstances.

In this case, the testimony of KLVD was the heart of the Government's proof for the charges. There was no other evidence to corroborate the sexual misconduct. Appellant admitted to sleeping in the same bed as his niece in just his underwear; however, that act alone does not establish the elements of carnal knowledge or sodomy. There was no dispute that KLVD did, or was involved with, the conduct or acts the defense wanted to present. There was also no dispute that KLVD experienced

9

certain repercussions or responses from her parents and the school system as a result of her conduct. The case is a "he said/she said" scenario, revolving around the testimony of Appellant and the alleged victim.

A reasonable panel might have reached a significantly different impression of KLVD's credibility had the defense been able to present the excluded evidence. As asserted by the defense, KLVD may have misrepresented the event with her uncle in order to deflect attention away from herself or change her situation. The defense's primary purpose in seeking the admission of this evidence was to argue that the evidence indicated that KLVD was getting more adverse attention from her parents, school, and the counseling system than she wanted. The defense would have argued that KLVD was seeking ways to divert the focus from herself and her conduct and that being a "victim" was a way of accomplishing this. The defense could also argue that KLVD did gain more empathy from her mother, at school, and in the counseling system. This was the defense's primary purpose in arguing for admission of this evidence.

The evidence supporting the defense's theory that KLVD fabricated the allegation was that there was tension between KLVD and her mother and that on one occasion, KLVD's mother beat her, causing bruises that resulted in intervention by Family Services. There was evidence that KLVD's mother and her aunt,

Appellant's wife, were very close.  The defense also posited that KLVD wanted to hurt her mother and divert her mother's attention away from her by "driving" a "wedge between mom and sister."  According to the defense, KLVD may not have been directly trying to hurt her uncle, but trying to hurt her mother.  Although this was not the defense's strongest theory for admission of the evidence, collectively, this theory may have supported the defense's theory that KLVD fabricated the allegations in order to deflect unwanted attention away from herself and problems with her parents and school.[5]

Likewise, the lower court erred by affirming the ruling of the military judge.  The lower court focused on our ruling in Bahr, noting that:  "[I]n this case the relationship between the victim's mother and the appellant was much more remote than in Bahr."  2005 CCA LEXIS 139, at *9, 2005 WL 1017585, at *3.  This overlooks the fact that a reasonable juror could have been convinced by the defense's theory that KLVD had a motive to fabricate a story and could have, therefore, formed a significantly different impression of KLVD's credibility.

---

[5] See Gray, 40 M.J. at 81 (military judge erred in precluding evidence that supported the defense theory that the appellant's subordinate was the initial target of the Texas Department of Human Services (DHS) investigation and that the subordinate and his wife accused the appellant of sexual misconduct with the wife "in order to shift DHS attention from their own dysfunctional and abusive family situation").

11

United States v. Moss, No. 05-0545/AF

Pursuant to M.R.E. 608(c), the defense should have been allowed to cross-examine KLVD and her mother on their relationship, including allegations of beatings, KLVD's alcohol and drug use, KLVD's removal from school, KLVD's suicide attempts, and her "general acts of disobedience." These topics should not have been off-limits during cross-examination because they supported a viable defense theory as to why KLVD would fabricate the rape allegations. Moreover, the evidence was relevant as a response to the Government's theory presented at trial that the delay in reporting the incident for approximately seven months was because KLVD did not want to cause a break in the relationship between her mother and her aunt and did not want to hurt the family. The defense theory that she fabricated the allegations to get the focus off her misbehavior during that period of time rebuts this theory raised by the prosecution.

M.R.E. 403

Admission of the specific acts is "still dependent upon the military judge properly evaluating the evidence's probative value against its potential for unfair prejudice as measured by Rule 403." 2 Stephen A. Saltzburg et al., Military Rules of Evidence Manual § 608.02[3][a], at 6-52 (5th ed. 2003). Therefore, in this case, the evidence must pass a M.R.E. 403 balancing test before it can be admitted.

12

The probative value of the evidence in this case is high. The evidence directly fits the defense theory for which it would have been offered. On the other hand, the risk of unfair prejudice in this case is fairly low. Although the evidence was probative to the defense theory, it was a double-edged sword that also could have hurt Appellant's case. When viewed in context of the timing of the events, KLVD's prior bad acts could be seen as evidence of post traumatic stress disorder stemming from the alleged rape.[6] Thus, the danger of unfair prejudice in this case does not significantly outweigh the probative value of admitting the evidence.

## Harmless Beyond a Reasonable Doubt

In determining whether or not the erroneous exclusion of evidence is harmless, this Court considers:

> the importance of the witness' testimony in the prosecution's case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, the extent of cross-examination otherwise permitted, and of course, the overall strength of the prosecution's case.

Bahr, 33 M.J. at 234 (quoting Van Arsdall, 475 U.S. at 684. Interestingly, the trial counsel argued during her closing argument that the defense was unable to attack KLVD's credibility and that "the only thing that [the defense] could

---

[6] The actions cited in the motion in limine all occurred after the alleged rape but before KLVD came forward.

13

come up with" was inconsistencies in KLVD's testimony and her prior statements. The trial counsel acknowledged that there was no medical evidence, no eyewitness, and that the case "boils down to the credibility of the two witnesses." As a result of the military judge's erroneous ruling, the defense had no way of showing bias or motive to misrepresent based upon what was going on in KLVD's life during the seven months between the overnight stay at Tyndall Air Force Base and when KLVD reported the alleged sexual assault. The defense lost its ability to attack the Government's only evidence against Appellant.

We hold that Appellant's rights to cross-examine the witnesses called against him and to present his defense were improperly limited by the military judge's ruling. This case was a credibility contest between Appellant and KLVD. Appellant acknowledged in his pretrial statement that he drank beer, allowed KLVD to sip a beer, and that he climbed into bed with KLVD to sleep, wearing nothing but his underwear. Although these facts are circumstantial evidence of sexual misconduct, whether the members could conclude there was sexual intercourse and sodomy depended on whether they believed Appellant or KLVD. It is impossible to say whether evidence that could have been used to attack the credibility of KLVD would have raised some

doubt as to whether KLVD's version of the event was accurate.[7] The military judge's ruling essentially deprived Appellant of his best defense, which was to demonstrate KLVD's bias and to meaningfully challenge her credibility. It is the members' role to determine whether a prosecutrix's testimony is credible or biased.[8] The weight and credibility of the Government's main witness are matters for the members alone to decide. Bins, 43 M.J. at 85. Since the excluded evidence may have tipped the credibility balance in Appellant's favor, we find that the error was not harmless beyond a reasonable doubt.

## Conclusion

The decision of the United States Air Force Court of Criminal Appeals is reversed. The findings of guilty and the sentence are set aside. The record of trial is returned to the Judge Advocate General of the Air Force. A rehearing is authorized.

---

[7] United States v. Tippy, 25 M.J. 121, 122 (C.M.A. 1987) (when a military judge erroneously precluded relevant evidence, this Court concluded that it "will not be satisfied unless impartial triers of fact, imbued with the full knowledge of this OSI conduct, tested by the crucible of cross-examination and confrontation, properly instructed in the laws of entrapment, and applying their good judgment, common sense, understanding of life and the ways of young men and manipulative agents, conclude beyond a reasonable doubt that he is guilty").

[8] See Olden v. Kentucky, 488 U.S. 227, 232 (1988) ("It is plain to us that '[a] reasonable jury might have received a significantly different impression of [the witness's] credibility had [defense counsel] been permitted to pursue his proposed line of cross-examination.'" (quoting Van Arsdall, 475 U.S. at 680)).