*This opinion is subject to revision before publication*

# UNITED STATES COURT OF APPEALS FOR THE ARMED FORCES

———————

## UNITED STATES
Appellee

**v.**

## Brandon Z. Miller, Specialist
United States Army, Appellant

**No. 25-0025**
Crim. App. No. 20230026

Argued May 21, 2025—Decided September 24, 2025

Military Judges: Jacqueline Tubbs (arraignment)
and Adam S. Kazin (trial)

For Appellant: *Captain Andrew W. Moore* (argued); *Lieutenant Colonel Autumn R. Porter, Major Bryan A. Osterhage*, and *Jonathan F. Potter,* Esq. (on brief).

For Appellee: *Captain Nicholas A. Schaffer* (argued); *Colonel Richard E. Gorini* and *Major Justin L. Talley* (on brief).

Amicus Curiae in Support of Appellant: *Colonel Pilar G. Wennrich*, USAF, and *Dwight H. Sullivan*, Esq. (on behalf of the Air Force Appellate Defense Division) (on brief).

Judge HARDY delivered the opinion of the Court, in which Chief Judge OHLSON, Judge SPARKS, and Judge JOHNSON joined. Judge MAGGS filed a separate dissenting opinion.

———————

Judge HARDY delivered the opinion of the Court.

Like the federal civilian courts and all state courts, the military justice system includes a rule—Military Rule of Evidence (M.R.E.) 412—that restricts the ability of an accused charged with a sexual offense to introduce evidence about the past sexual activity or predisposition of the alleged victim.[1] If an accused seeks to admit evidence covered by the rule, the President has ordered that the military judge must conduct a closed hearing to determine whether the evidence may be admitted. M.R.E. 412(c)(2). We granted review in this case to determine if the automatic closure of such hearings violates an accused's constitutional or regulatory right to a public trial. Because we conclude that neither the Sixth Amendment public trial right nor the Rule for Courts-Martial (R.C.M.) 806 public trial right extends to hearings conducted pursuant to M.R.E. 412, the military judge did not err when he closed the M.R.E. 412 hearings during the pretrial phase of Appellant's court-martial. We therefore affirm the decision of the United States Army Court of Criminal Appeals (ACCA).

## I. Background

The Government charged Appellant with two specifications of sexually assaulting civilian B.M. in violation of Article 120, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 920 (2018).[2] Prior to trial, the defense filed two motions to admit evidence under M.R.E. 412(b). Following Appellant's arraignment, the military judge conducted an Article 39(a) session[3] and closed the courtroom to the public as required by M.R.E. 412(c)(2) to litigate the defense's first motion. The defense did not object to the closure.

---

[1] M.R.E. 412 and its civilian federal and state law equivalents are commonly known as rape shield laws.

[2] Although not relevant to this appeal, the Government also charged Appellant with one specification of assault in violation of Article 128, UCMJ, 10 U.S.C. § 928 (2018), and one specification of willfully disobeying a superior commissioned officer in violation of Article 90, UCMJ, 10 U.S.C. § 890 (2018).

[3] 10 U.S.C. § 839(a) (2018).

About a year later, the military judge conducted a second Article 39(a) session to litigate the defense's second motion and again ordered the courtroom's closure. This time, defense counsel objected to the closure and requested that the military judge consider whether the closure violated Appellant's constitutional right to a public trial. The military judge noted the objection and overruled it without further comment.

On January 19, 2023, a panel with enlisted members sitting as a general court-martial convicted Appellant, contrary to his pleas, of one specification of sexual assault and one specification of willfully disobeying a superior commissioned officer, in violation of Articles 90 and 120, UCMJ, respectively. The ACCA summarily affirmed. *United States v. Miller*, No. ARMY 20230026, slip op. at 1 (A. Ct. Crim. App. July 19, 2024) (per curiam) (unpublished). We granted review of the following issue:

> Whether the total closure of the court over Appellant's objection violated his right to a public trial.

*United States v. Miller*, 85 M.J. 375 (C.A.A.F. 2025) (order granting review).

## II. Standard of Review

This Court reviews a military judge's decision to close the courtroom for an abuse of discretion. *United States v. Hasan*, 84 M.J. 181, 204 (C.A.A.F. 2024). Finding an abuse of discretion calls for more than a difference of opinion. *United States v. McElhaney*, 54 M.J. 120, 130 (C.A.A.F. 2000). Rather, to constitute an abuse of discretion, the challenged decision must be "arbitrary, fanciful, clearly unreasonable, or clearly erroneous." *Id.* (citations omitted) (internal quotation marks omitted). Additionally, interpreting the interplay between provisions of the R.C.M. and the M.R.E. is a question of law that we review de novo. *United States v. Hamilton*, 78 M.J. 335, 342 (C.A.A.F. 2019).

## III. Discussion

Before this Court, Appellant raises two arguments, one based on the Constitution, and one based on the R.C.M. First, Appellant argues that the military judge's closure of his M.R.E. 412 hearings violated his Sixth Amendment

right to a public trial under *Waller v. Georgia*, 467 U.S. 39 (1984). Second, even if the Sixth Amendment public trial right does not extend to M.R.E. 412 hearings, Appellant argues that the President extended a qualified public trial right to such hearings when he promulgated R.C.M. 806(b)(4). For the reasons set forth below, we hold that neither the Sixth Amendment nor R.C.M. 806 applies to M.R.E. 412 hearings and that the military judge did not err by conducting closed hearings as required by M.R.E. 412(c).

### A. Military Rule of Evidence 412

In 1978, Congress enacted the Privacy Protection for Rape Victims Act to protect the privacy of rape victims. Pub. L. No. 95-540, § 1, 92 Stat. 2046, 2046-47 (1978). The act amended the Federal Rules of Evidence by creating Rule 412, which stated: "in a criminal case in which a person is accused of rape or of assault with intent to commit rape, reputation or opinion evidence of the past sexual behavior of an alleged victim of such rape or assault is not admissible." § 2(a), 92 Stat. at 2046-47. Two years later, when the President promulgated the first Military Rules of Evidence, he incorporated a similar rule as M.R.E. 412. Exec. Order No. 12,198, 45 Fed. Reg. 16,932 (Mar. 14, 1980).

The version of M.R.E. 412 that governed Appellant's court-martial states:

> (a) *Evidence generally inadmissible.* The following evidence is not admissible in any proceeding involving an alleged sexual offense except as provided in subdivisions (b) and (c):
>
> > (1) Evidence offered to prove that a victim engaged in other sexual behavior; or
> >
> > (2) Evidence offered to prove a victim's sexual predisposition.

M.R.E. 412(a) (2019 ed.).[4] The rule further provides three exceptions under which evidence otherwise inadmissible

---

[4] All further citations to the Military Rules of Evidence and Rules for Courts-Martial in this opinion refer to the *Manual for*

under M.R.E. 412(a) may still be admitted. M.R.E. 412(b). If an accused, such as Appellant, wishes to offer evidence pursuant to one of the three exceptions, the rule establishes a procedure by which the military judge will hold a hearing to determine whether the proffered evidence will be admitted. M.R.E. 412(c). Importantly for the purpose of this appeal, the rule dictates that the hearing "shall be closed." M.R.E. 412(c)(2).

### B. The Sixth Amendment Public Trial Right

The Sixth Amendment guarantees the accused in a criminal prosecution the right to a "public trial." U.S. Const. amend. VI. This fundamental right traces its roots back a millennium to England prior to the Norman Conquest and is an indispensable attribute of the Anglo-American trial. *See Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 564-73 (1980) (chronicling a historical overview of the right to a public trial). Consistent with this tradition, our predecessor Court affirmed that the Sixth Amendment right to a "public trial" applies to courts-martial. *United States v. Hershey*, 20 M.J. 433, 435-36 (C.M.A. 1985).

Although there is no dispute that the public trial right applies generally to courts-martial, there is less certainty—both in the civilian and the military courts—about the scope of the right. The Supreme Court has made clear that the right applies to "the actual proof at trial" (i.e., the presentation of evidence to the jury), *Waller*, 467 U.S. at 44, but it has never clarified how far the right extends beyond that core application or articulated a test for determining whether the right applies to specific pretrial hearings.[5]

---

*Courts-Martial, United States* (2019 ed.) (*Manual* or *MCM*), unless otherwise noted.

[5] We are not aware of any cases addressing the constitutionality of M.R.E. 412's civilian counterpart Fed. R. Evid. 412, but state courts have split over whether the public trial right applies to state law rape shield hearings. *Compare Commonwealth v. Jones*, 37 N.E.3d 589 (Mass. 2015) (finding mandatory closure of rape shield hearings unconstitutional), and *State v. Hoff*, 385 P.3d 945, 949 (Mont. 2016) (finding right to public trial attached to rape shield hearing), *with State v. McNeil*, 393 S.E.2d 123,

The Supreme Court has, however, confirmed that the public trial right does apply to two specific pretrial proceedings—suppression hearings and voir dire—but not for the same reasons. In *Waller*, the Court concluded that suppression hearings are often just as important as the trial itself, noting that in many criminal trials, the suppression hearing determines the outcome because defendants often accept a plea deal if they lose a motion to suppress critical evidence. 467 U.S. at 46-47. The Court also observed that challenges to the seizure of evidence frequently attack the conduct of law enforcement and prosecutors, issues in which there is a strong public interest in transparency and increased public scrutiny. *Id.* at 47.

In *Presley v. Georgia*, the Supreme Court concluded that if the First Amendment granted the public the right to attend juror selection proceedings (as it had previously held in *Press-Enterprise Co. v. Superior Court of California,* 464 U.S. 501 (1984)), then "there is no legitimate reason" not to extend the same right of a proceeding open to the public to a criminal defendant under the Sixth Amendment. 558 U.S. 209, 213 (2010) (per curiam). In *Press-Enterprise*, the Court based its conclusion on two factors: (1) that the selection of jurors had historically been a presumptively public process in both colonial America and in England, and (2) that opening a proceeding to the public enhances both the basic fairness of the proceeding and the appearance of fairness to the public. 464 U.S. at 505-08.

Appellant argues that the values discussed in *Waller* are implicated by M.R.E. 412 hearings, and therefore the Sixth Amendment right to a public trial should extend to M.R.E. 412 hearings as well. In support of this argument, Appellant relies primarily on *Jones*, a decision from the Supreme Judicial Court of Massachusetts in which that court concluded that the public trial right extended to in camera hearings conducted under the Massachusetts rape shield law. 37 N.E.3d at 603-07 (examining Mass. Gen.

---

126-27 (N.C. Ct. App. 1990) (finding no error in closure of rape shield hearing and distinguishing from *Waller*), and *State v. Macbale*, 305 P.3d 107 (Or. 2013) (upholding in camera requirement for the rape shield hearings).

Laws ch. 233, § 21B). The Massachusetts court reasoned that rape shield hearings have "a far closer kinship to pretrial suppression hearings" than to routine administrative matters that other courts have ruled may be closed. *Id*. at 604. The court further concluded that, like suppression hearings, the judge's determination during a rape shield hearing will often have "a critical impact on the trial itself." *Id*. The court also rejected the reasoning of other state courts that have concluded that the Sixth Amendment public trial right does not extend to their states' rape shield hearings. *Id*. at 605-06.

We are not persuaded by Appellant's arguments or by the *Jones* opinion. In our view, M.R.E. 412 hearings are fundamentally different from suppression hearings and voir dire for several reasons. First, unlike suppression hearings—where a party attempts to exclude evidence that is otherwise going to be admitted at trial—the subject matter of a M.R.E. 412 hearing is presumed to be inadmissible and therefore excluded from trial. The President has predetermined that evidence of a sexual offense victim's past sexual behavior or sexual predisposition is irrelevant to the question of the accused's guilt unless it meets one of three express exceptions. M.R.E. 412(a), (b). And except for when the evidence is constitutionally required to be admitted to protect the accused's due process rights, qualifying under one of the other two exceptions is still not sufficient on its own to admit the proffered evidence. The President has further ordered that M.R.E. 412 evidence is still inadmissible unless the probative value of such evidence outweighs the danger of unfair prejudice to the victim's privacy. M.R.E. 412(c)(3). And even then, the proffered M.R.E. 412 evidence could still be excluded for prejudice, confusion, waste of time, or other reasons under M.R.E. 403. M.R.E. 412(c)(3).

Second, we do not view M.R.E. 412 hearings to be as case critical or potentially dispositive as suppression hearings. The evidence litigated in M.R.E. 412 hearings is so collateral that it is rebuttably presumed to be irrelevant. Suppression hearings, in contrast, typically involve essential evidence such as confessions, identifications of the accused, or the physical evidence providing the basis of the

charges at trial. Suppression hearings carry such weight that the outcome of the hearing often results in charges being dropped or a plea being taken. *Waller*, 467 U.S. at 46 ("suppression hearings often are as important as the trial itself"). Additionally, suppression hearings often turn on the determination of contested factual matters that require resolution for a ruling on exclusion to be reached. Conversely, M.R.E. 412 hearings typically turn on legal questions—whether one of the exceptions applies and whether the proffered evidence's probative value outweighs unfair prejudice to the victim's privacy. Because the outcome of M.R.E. 412 hearings turn on questions of relevance, probative value, and prejudice, we view these rulings more akin to a pretrial conference concerning an evidentiary matter than a suppression hearing.[6] *Cf. Richmond Newspapers,* 448 U.S. at 598 n.23 (Brennan, J., concurring in the judgment) (noting that the implicit guarantee of the First Amendment of the public to attend criminal trials does not restrict judges' ability to conduct conferences in chambers, "inasmuch as such conferences are distinct from trial proceedings").

Third, we do not believe that M.R.E. 412 hearings invoke the same concerns about transparency and public scrutiny as suppression hearings. Suppression hearings often involve allegations of law enforcement negligence or malfeasance. Such misconduct strikes at the heart of due process and personal liberty, and the public airing of such behavior is of paramount interest to the public writ large. *Waller*, 467 U.S. at 47 ("The public in general also has a strong interest in exposing substantial allegations of police misconduct to the salutary effects of public scrutiny."). In contrast, evidence of a specific victim's past sexual behavior or predisposition has little value to the public. Indeed, an express purpose of M.R.E. 412 is to prevent unnecessary airing of a victim's sexual history. *See MCM*, Analysis of the Military Rules of Evidence app. 22 at A22-29 (1984 ed.)

---

[6] In *Jones*, the Massachusetts court asserted without explanation that the outcome of rape shield hearings " 'frequently depends on a resolution of factual matters.' " 37 N.E.3d at 604 (quoting *Waller*, 467 U.S. at 47). At least in the context of M.R.E. 412, we disagree with that assessment.

(explaining that M.R.E. 412 "is intended to shield victims of sexual assaults from the often embarrassing and degrading cross-examination and evidence presentations common to [sexual offense prosecutions]"). And if the evidence proffered at a M.R.E. 412 hearing is determined to be admissible, that evidence will be presented in open court during the public portion of the accused's trial.

Finally, unlike the voir dire process, M.R.E. 412 hearings have no historical tradition of being public as they are relatively new creations. But while rape shield hearings may be novel, the exclusion of presumptively irrelevant evidence from a trial is most certainly not. Indeed, "a presupposition involved in the very conception of a rational system of evidence" is the fundamental principle "which forbids receiving anything irrelevant, not logically probative." James Bradley Thayer, *Preliminary Treatise on Evidence at the Common Law* 264-65 (1898). Accordingly, historical precedent does not support the public airing of irrelevant evidence.

We acknowledge that M.R.E. 412 hearings share some characteristics with the core phases of courts-martial to which the public trial right applies. M.R.E. 412 hearings may involve the calling of witnesses and the presentation of evidence. But these similarities in form do not overcome the significant differences in substance described above.

We also recognize that the Supreme Court in *Waller* identified several "aims and interests" that contributed to its conclusion that the public trial right applies to suppression hearings. 467 U.S. at 446. Appellant argues that the public trial right should also apply to M.R.E. 412 hearings because some of these interests—such as ensuring that the public sees that the accused is fairly dealt with and not unjustly condemned; ensuring that the judge and prosecutor carry out their duties responsibly; and discouraging perjury—are also implicated in M.R.E. 412 hearings. We are not persuaded by this argument for two reasons. First, these *Waller* "aims and interests" are arguably implicated in every phase of a court-martial, which would call into question the constitutionality of every courtroom closure and in camera review dictated by the *Manual*, including those in M.R.E. 505 (classified information), M.R.E. 506

(government information), M.R.E. 507 (identity of inform-
ants), M.R.E. 513 (psychotherapist-patient privilege), and
M.R.E. 514 (victim advocate-victim privilege). We do not
believe that the Supreme Court in *Waller* intended to ex-
tend the public trial right to every pretrial proceeding in a
criminal trial.[7] Second, the Supreme Court also recognized
encouraging witnesses to come forward as an important in-
terest in *Waller*. 467 U.S. at 46. As noted above, an express
purpose of M.R.E. 412 is to protect the victims of sexual of-
fenses from embarrassing and degrading cross-examina-
tion. This *Waller* interest is advanced by the closure of
M.R.E. 412 hearings rather than degraded by it.

Taking all these factors into account, we conclude that
the right to a public trial under the Sixth Amendment does
not extend to M.R.E. 412 hearings. These hearings have a
discrete and limited purpose involving evidentiary deter-
minations and are not part of the "trial" for purposes of the
public trial right. Consequently, *Waller* and its standard
are inapplicable, and the military judge did not violate the
Sixth Amendment by closing the courtroom for the
M.R.E. 412 hearing.

### C. Rule for Courts-Martial 806

Even though the Sixth Amendment public trial right
does not apply to M.R.E. 412 hearings, the President has
the authority under Article 36, UCMJ, 10 U.S.C. § 836
(2018), to grant servicemembers greater protections than
those guaranteed by the Constitution. Consistent with this
principle, Appellant argues that the President conferred on
servicemembers a qualified right to a public M.R.E. 412
hearing via R.C.M. 806 regardless of the applicability of
the Sixth Amendment.

R.C.M. 806 states: "Except as otherwise provided in this
rule, courts-martial shall be open to the public."
R.C.M 806(a) (2019 ed.). The rule further provides:

---

[7] Such an interpretation of *Waller* would also call into ques-
tion the constitutionality of federal grand jury proceedings,
which are generally secret under Federal Rule of Criminal Pro-
cedure 6(e).

> Courts-martial shall be open to the public unless (A) there is a substantial probability that an overriding interest will be prejudiced if the proceedings remain open; (B) closure is no broader than necessary to protect the overriding interest; (C) reasonable alternatives to closure were considered and found inadequate; and (D) the military judge makes case-specific findings on the record justifying closure.

R.C.M. 806(b)(4) (2019 ed.). This is essentially a codification of the four-factor test presented by the Supreme Court in *Waller* for determining whether the closure of a suppression hearing was justified. *Hasan*, 84 M.J. at 205 & n.14 (noting that the same standard applied to both constitutional and R.C.M. court closure claims).

Appellant's argument is based on an alleged tension between M.R.E. 412(c)(2), which mandates the closure of M.R.E. 412 hearings, and R.C.M 806(a), which expressly states that courts-martial "shall be open to the public" unless "otherwise provided by this rule." Noting that R.C.M. 806 does not expressly exclude *any* proceedings from its application, Appellant argues that we must interpret M.R.E. 412(c)(2) to require closure only if the four-factor *Waller* test codified in R.C.M. 806(b)(4) has been satisfied.[8] Because the military judge did not consider whether R.C.M. 806(b)(4) was satisfied in this case, Appellant argues that the military judge abused his discretion when he closed Appellant's M.R.E. 412 hearing. Again, we disagree.

As an initial matter, it is not clear why "courts-martial" in R.C.M. 806(a) should be interpreted any broader than the Supreme Court interprets "trial" in the Sixth Amendment. *See Waller*, 467 U.S. at 43-44 (interpreting trial as the "presentation of evidence to the jury" and "the

---

[8] Appellant also argues in a footnote that M.R.E. 412 did not apply in this case because the evidence in question was prior allegations of sexual assault, not the victim's sexual behavior or predisposition. *See, e.g.*, Fed. R. Evid. 412, Advisory Committee Notes to 1994 Amendments ("Evidence offered to prove allegedly false prior claims by the victim is not barred by Rule 412. However, this evidence is subject to the requirements of Rule 404."). Given our resolution of Appellant's other arguments, we need not address this issue.

actual proof at trial"). Appellant cites R.C.M. 103(8)(B) in support of his argument that R.C.M. 806(a) applies to all Article 39(a) hearings, but that provision addresses *who* is part of a court-martial rather than which procedures are part of a court-martial for the purposes of R.C.M. 806. Furthermore, R.C.M. 103(8)(B) includes the caveat "depending on the context" which further undermines Appellant's argument. Given that R.C.M. 806 expressly incorporates the Supreme Court's test from *Waller*, we see no obvious reason why the public trial right in R.C.M. 806(a) would be any broader than the right guaranteed by the Sixth Amendment.

But we need not determine the precise scope of the R.C.M. public trial right because even if we accepted Appellant's interpretation of R.C.M. 806(a), we still do not agree with his broader argument. Any tension between M.R.E. 412 and R.C.M. 806 would easily be resolved through the application of a well-established canon of statutory interpretation: the specific governs the general. *RadLAX Gateway Hotel, LLC v. Amalgamated Bank*, 566 U.S. 639, 645 (2012). As explained by the Supreme Court, this canon is particularly true when there is a comprehensive statutory scheme and the drafters have purposely addressed specific concerns with specific solutions. *Id.* This canon is often applied when there is a general rule of permission or prohibition that is contradicted by a contrary specific rule. *Id.* To harmonize the scheme, the specific provision is interpreted as an exception to the general rule. *Id.*

Here, the *Manual* presents a comprehensive scheme for conducting courts-martial. R.C.M. 806(a) is a general rule that prohibits the closure of courts-martial to the public. In contrast, M.R.E. 412(c) is a narrow mandate for closed proceedings in very specific circumstances. It only applies if a party has properly moved to offer a certain type of evidence, under a specific exception to the general prohibition of said evidence. Following the canon, M.R.E. 412(c)(2) is properly interpreted as an exception to R.C.M. 806's general rule. Accordingly, the restrictions in R.C.M. 806(b)(4) do not apply to the closure of M.R.E. 412 hearings.

## D. Conclusion

Neither the Sixth Amendment public trial right nor the public trial right conferred by R.C.M. 806 applies to hearings conducted pursuant to M.R.E. 412(c)(2). We therefore answer the granted issue in the negative and hold that the military judge's closure of the courtroom did not violate Appellant's right to a public trial.

## IV. Judgment

The decision of the United States Army Court of Criminal Appeals is affirmed.

Judge Maggs, dissenting.

The Court holds that a military judge may close a hearing on the admissibility of evidence under Military Rule of Evidence (M.R.E.) 412 without conducting a case-by-case analysis of whether the closure would violate the accused's Sixth Amendment right to a public trial. This holding, in my view, conflicts with the Supreme Court's decisions in *Waller v. Georgia*, 467 U.S. 39 (1984), and *Presley v. Georgia*, 558 U.S. 209 (2010) (per curiam), and this Court's decision in *ABC, Inc. v. Powell*, 47 M.J. 363 (C.A.A.F. 1997).

In *Waller*, the Supreme Court held that a trial judge may close certain types of hearings over the accused's objection only after making a determination on the specific facts of the case: (1) that closing the hearing will advance an "overriding interest," (2) that the closure is "no broader than necessary to protect that interest," and (3) that there are no "reasonable alternatives" to closing the hearing. 467 U.S. at 48; *see also Presley*, 558 U.S. at 213-14 (following *Waller*). This Court reached the same conclusion in *ABC, Inc.*, holding that a decision to close certain types of hearings "must be made on a case-by-case, witness-by-witness, and circumstance-by-circumstance basis." 47 M.J. at 365.

For reasons that I will explain, I conclude that a hearing under M.R.E. 412 is the kind of hearing for which an individualized determination is necessary under these precedents. No such determination was made in this case. I therefore would remand the case for additional proceedings to ascertain whether the omission of the individualized determination caused any prejudice. Because the Court affirms without ordering such a remand, I respectfully dissent.

## I. Background

M.R.E. 412(a) generally bars admission of evidence offered to prove that the victim of a sexual offense "engaged in other sexual behavior" or offered to prove the "victim's sexual predisposition." M.R.E. 412(b), however, recognizes certain exceptions to this general prohibition. M.R.E. 412(c) then establishes procedures that the military judge must follow if an accused seeks admission of evidence under one of these exceptions. Important here, M.R.E.

412(c)(2) specifies: "Before admitting evidence under this rule, the military judge must conduct a hearing, *which shall be closed*." (Emphasis added.)

In this case, the military judge twice closed the court-martial to conduct a hearing pursuant to M.R.E. 412(c)(2) to determine whether proffered evidence was admissible under the exceptions in M.R.E. 412(b). The military judge ruled that the evidence at issue during the first hearing could be admitted under one of the exceptions found in M.R.E. 412(b). Conversely, the military judge ruled that the evidence proffered at the second hearing could not be admitted at the court-martial. The record contains the testimony of witnesses, the arguments of counsel, and the decision of the military judge, but all of this is under seal and thus not available for the public to see.

Prior to the second hearing, trial defense counsel objected to its closure. Trial defense counsel argued that the military judge could not close the court-martial to the public without "a constitutional analysis as to why the hearing is going to be closed." The military judge briefly responded that the objection "is noted and is overruled." The United States Army Court of Criminal Appeals (ACCA) summarily affirmed in a per curiam decision. We granted review to decide the question "[w]hether the total closure of the court over Appellant's objection violated his right to a public trial."

**II. Discussion**

The Sixth Amendment provides: "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial." U.S. Const. amend. VI. This Court has previously held that the Sixth Amendment right to a public trial applies to a court-martial. *United States v. Hershey*, 20 M.J. 433, 435 (C.M.A. 1985). This case presents three questions about the right to a public trial. The first question is whether a hearing under M.R.E. 412 is covered by the Sixth Amendment right to a public trial. If this kind of hearing is covered, the second question is whether the military judge's summary decision to close the hearing violated that right. And if a violation did occur, the third question is what remedy is necessary.

### A. Scope of the "Public Trial" Right

The right to a public trial "extends beyond the actual proof at trial." *Waller*, 467 U.S. at 44. In *Waller*, for example, the Supreme Court held that the public trial right applied to a hearing on a motion to suppress wiretap evidence. *Id.* at 43. Similarly, in *Presley,* the Supreme Court held that the public trial right extended to voir dire proceedings. 558 U.S. at 209; *see also Press-Enterprise Co. v. Superior Ct. of California*, 464 U.S. 501, 513 (1984) (holding that the First Amendment also requires public voir dire proceedings).[1] *In ABC, Inc.*, this Court held that the public trial right extended to a preliminary hearing under Article 32, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 832 (1994). 47 M.J. at 365.

The Supreme Court has not announced a specific rule for determining the portions of a criminal proceeding that are subject to the public trial right.[2] In the absence of such a rule, however, the Supreme Court decision in *Waller* provides guidance for determining the types of proceedings that are covered by the public trial right. The Supreme

---

[1] The Supreme Court has reasoned that the First Amendment implicitly provides a right of public access to trials. *Presley*, 558 U.S. at 211-12 (explaining precedents in this area). The Supreme Court has not determined whether the right to a public trial under the Sixth Amendment is "coextensive" with this First Amendment right in all contexts. *Id.* at 213. But in *Waller* and *Presley*, which were Sixth Amendment cases, the Supreme Court relied "heavily" on *Press-Enterprise*, which was a First Amendment case. *Id.* at 212-13.

[2] The Air Force Appellate Defense Division (AFADD), as amicus curiae, briefly but helpfully addresses the original meaning of the term "public trial" in the Sixth Amendment. AFADD argues that a hearing analogous to a hearing under M.R.E. 412 would have been considered part of a "public trial" at the time of the Sixth Amendment's adoption because "[s]uch a hearing bears the essential attributes of a late-eighteenth century American criminal trial." Although this argument may well be correct, I hesitate to rely on it because neither the Government nor Appellant discusses the original meaning of "public trial" in their briefs. I therefore confine my analysis to the precedents of the Supreme Court and this Court and leave the question of the original meaning of "public trial" for a future decision.

Court in *Waller* first observed that public trials serve important functions, such as allowing the public to see whether an accused person is treated fairly; ensuring the prosecutor, judge, and jury act responsibly; encouraging witnesses to come forward; and discouraging perjury. 467 U.S. at 46. The Supreme Court then reasoned that "[t]hese aims and interests are no less pressing in a hearing to suppress" evidence than in "the trial itself." *Id.* (citations omitted).

Neither the Supreme Court nor this Court has decided the issue of whether the public trial right applies to hearings under M.R.E. 412 or its federal civilian analogue, Fed. R. Evid. 412.[3] State courts are divided on whether the public trial right applies to state law analogues of M.R.E. 412 and Fed. R. Evid. 412. *Compare, e.g.*, *Commonwealth v. Jones*, 37 N.E.3d 589, 602 (Mass. 2015) (holding that the public trial right extends to hearings under the state law equivalent of Fed. R. Evid. 412 and M.R.E. 412), *with State v. Macbale*, 305 P.3d 107, 122 (Or. 2013) (holding the opposite).

Having considered the thorough arguments of the parties, I am persuaded that the public trial right does apply to an M.R.E. 412 hearing. In my view, this issue is largely controlled by the reasoning of this Court in *ABC, Inc.* In *ABC, Inc.*, the Court considered whether an investigative hearing under Article 32, UCMJ, was properly closed to the

---

[3] M.R.E. 412 is similar to Fed. R. Evid. 412, which this Court has described as M.R.E. 412's "federal analogue." *United States v. Gaddis*, 70 M.J. 248, 255 (C.A.A.F. 2011). Amendments to M.R.E. 412 have ensured that M.R.E. 412 and Fed. R. Evid. 412 remain "closely align[ed]." *Manual for Courts-Martial, United States*, Analysis of the Military Rules of Evidence app. 16 at A16-3 (2019 ed.) [hereinafter Drafters' Analysis]. Thus, Fed. R. Evid. 412(a) and 412(b) contain the same general prohibitions and exceptions as M.R.E. 412(a) and 412(b). And much like M.R.E. 412(c)(2), Fed. R. Evid. 412(c)(2) provides: "Before admitting evidence under this rule, the court must conduct an in camera hearing and give the victim and parties a right to attend and be heard." Given the similarity of the two provisions, this Court has considered cases under Fed. R. Evid. 412 when interpreting M.R.E. 412. *E.g.*, *Gaddis*, 70 M.J. at 252-53.

public and press. That case, like this case, involved allegations of sexual misconduct involving multiple victims. The investigating officer had closed the hearing under Article 32, UCMJ, in part to "shield the alleged victims from possible news reports about anticipated attempts to delve into each woman's sexual history."[4] 47 M.J. at 364. But following the Supreme Court's decision in *Press-Enterprise Co.* and other cases, the Court held that "the military accused is likewise entitled to a public Article 32 investigative hearing." *Id.* at 365 (citations omitted).

I see no persuasive way of distinguishing *ABC, Inc.* and this case. Both cases concerned hearings prior to trial on the merits involving testimony as to the sexual experiences of alleged victims. There was no reason to believe that all testimony presented at the Article 32, UCMJ, hearing would later be proffered or admitted at the court-martial. But the Court still found that the right to a public trial required the Article 32, UCMJ, hearing to be presumptively open. *Id.*

Although the Government does not distinguish *ABC Inc.*, the Government argues that M.R.E. 412 hearings are unlike other hearings that deal with the merits of a case because M.R.E. 412 creates a "rule of exclusion" where the evidence at issue is presumed to be irrelevant. But the type of evidence proffered in an M.R.E. 412 hearing is not always irrelevant. It may be admitted if one of the exceptions in M.R.E. 412(b) applies. Indeed, this Court has overturned decisions made by military judges to exclude evidence under M.R.E. 412 when this Court determined that the evidence did fall into one of the exceptions outlined under M.R.E. 412(b) and that exclusion of the evidence was prejudicial to the accused. *E.g.*, *United States v. Ellerbrock*, 70 M.J. 314, 320-21 (C.A.A.F. 2011); *United States v. Buenaventura*, 45 M.J. 72, 80 (C.A.A.F. 1996); *United States v. Jensen*, 25 M.J. 284, 289 (C.M.A. 1987); *United States v.*

---

[4] The current version of Article 32, UCMJ, 10 U.S.C. § 832(d)(3) (2024), states that a "victim may not be required to testify at the preliminary hearing." *ABC, Inc.* was decided before the victim's right to refuse to testify at an Article 32 hearing was added to the UCMJ.

*Dorsey*, 16 M.J. 1, 8 (C.M.A. 1983); *United States v. Gray*, 40 M.J. 77, 80-81 (C.M.A. 1994). In short, in many cases, the admission of evidence important to the court-martial may turn on the outcome of an M.R.E. 412 hearing in the same way as it may turn on the outcome of a suppression hearing.

In this respect, I agree with the reasoning of the Supreme Judicial Court of Massachusetts in *Jones*. Addressing closed hearings under a Massachusetts "rape shield law" analogue to Fed. R. Evid. 412, the court in that case stated:

> A rape shield hearing is neither a routine administrative matter nor is it "trivial" to the trial. On the contrary, a rape shield hearing has a far closer kinship to pretrial suppression hearings, to which the United States Supreme Court decided in *Waller* that the Sixth Amendment public trial right attaches, than to any of the routine administrative matters that courts have subsequently determined may be conducted in a closed court room. Like a pretrial suppression hearing, the determination emerging from a rape shield hearing often will have a critical impact on the trial itself, particularly in cases that hinge on the issue of consent. Additionally, the admissibility of evidence otherwise barred under the rape shield law hinges on a showing that the evidence fits into one of the exceptions to the statute . . . . The outcome of a rape shield hearing, then, like that of a pretrial suppression hearing, "frequently depends on a resolution of factual matters." *Waller,* 467 U.S. at 47.

*Jones*, 37 N.E.3d at 604 (citation omitted).

### B. Possible Closure Despite the Public Trial Right

Although in my view the right to a public trial extends to hearings under M.R.E. 412, I recognize that this right is not absolute. *Press-Enterprise Co.*, 464 U.S. at 509. On the contrary, closures of proceedings covered by the public trial right may occur in some instances, although these closures "must be rare and only for cause shown that outweighs the value of openness." *Id.*

In *Waller*, the Supreme Court held that a hearing to which the public trial right extends may be closed if (1) "the party seeking to close the hearing . . . advance[s] an overriding interest that is likely to be prejudiced," (2) "the closure [is] no broader than necessary to protect that interest," and (3) the "trial court . . . consider[s] reasonable alternatives to closing the proceeding." *Waller*, 467 U.S. at 48. The trial court also must "make findings adequate to support the closure" under these considerations. *Id.* And as noted previously, this Court held in *ABC, Inc.* that the determination whether to close a portion of the court-martial "must be made on a case-by-case, witness-by-witness, and circumstance-by-circumstance basis." *ABC, Inc.*, 47 M.J. at 365 (citing *Globe Newspaper Co. v. Superior Ct. for the Cnty. of Norfolk*, 457 U.S. 596, 609 (1982)).

Accordingly, if the accused requests that an M.R.E. 412 hearing be open, the military judge must make an individualized determination of whether the accused's public trial right must yield in accordance with *Waller* and *ABC, Inc.* For most M.R.E. 412 hearings, the named victim's privacy likely will be the kind of "overriding interest" that the Supreme Court addressed in *Waller*. This Court, indeed, previously has recognized that "M.R.E. 412 is intended to 'shield victims of sexual assaults from the often embarrassing and degrading cross-examination and evidence presentations common to'" sexual offense prosecutions in the past. *Gaddis*, 70 M.J. at 252 (quoting Drafters' Analysis app. 22 at A22-35 (2008 ed.)). Accordingly, in a given case, a military judge may conclude, after an individualized analysis, that the hearing or portions of the hearing should be closed.

But the usually important interest in the named victim's privacy might not be "overriding" in all cases. For example, the named victim for whatever reason might not oppose an open hearing with respect to some matters. And even if some parts of a hearing should be closed under the test in *Waller*, other parts of the hearing may not need to be closed. For example, if counsel are merely arguing about legal issues, such as the meaning of M.R.E. 412 or legal precedents, without disclosing confidential facts, closure may be unnecessary.

## C. Remedy in This Case

The foregoing discussion does not answer the question of whether the second M.R.E. 412 hearing in this case should have been open or closed, in whole or in part. Instead, it leads only to the conclusion that the military judge erred *by not making an individualized determination* whether that hearing should be closed once the accused objected to its closure. In *Waller*, the Supreme Court dealt with a similar situation by remanding the case and ordering an individualized determination of whether parts of the hearing in question should have been open and whether a new hearing should be held. *Waller*, 467 U.S. at 50. The Supreme Court further explained that "[i]f, after a new . . . hearing, essentially the same evidence is suppressed, a new trial presumably would be a windfall for the defendant, and not in the public interest." *Id.*

Following this precedent, the appropriate remedy here would be to remand the case for a *DuBay* hearing.[5] In the *DuBay* hearing, the military judge would make an individualized determination whether Appellant's M.R.E. 412 hearing should have been closed. If this case-by-case determination were to reveal that the M.R.E. 412 hearing should have been closed, any error in failing to make a case-by-case determination in the first instance would be harmless, and the findings and sentence should be affirmed.

On the other hand, if the *DuBay* military judge were to determine that the second M.R.E. 412 hearing in this case should not have been closed, then a public M.R.E. 412 hearing would have to be held. What happens next would depend on the outcome of the public hearing. If the public hearing resulted in the same suppression of the evidence that already occurred at the original trial, then a rehearing would be unnecessary, and the findings and sentence would have to be affirmed. Otherwise, a new trial with the new evidence would be necessary unless exclusion of the evidence was harmless.

---

[5] *United States v. DuBay*, 17 C.M.A. 147, 37 C.M.R. 411 (1967).

8

### III. Conclusion

For the foregoing reasons, I would not affirm the decision of the United States Army Court of Criminal Appeals at this time but would instead remand the case for further proceedings consistent with my opinion.